IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DERRONDAS REED, #K90424, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 19−cv−00295−SMY |
| LT. DYE, C/O HUGHEY, LT. BROOKMAN, WARDEN LASHBROOK, AMY BURLE, JOHN DOE, JOHN BALDWIN, JASON HART, and LARISSA WANDRO, | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Derrondas Reed, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Western Illinois Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations resulting from a false and retaliatory disciplinary ticket he received at Menard Correctional Center ("Menard"). In the Amended Complaint,[1] Plaintiff asserts claims against the defendants under the First, Fifth, and Fourteenth Amendments. (Doc. 22). He seeks declaratory and monetary relief. *Id*. at pp. 20-21.

The Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner Complaints to filter out non-

---

[1] Derrondas Reed and Terrance Johnson originally filed this action together on March 12, 2019. (Doc. 1). Pursuant to an Order entered March 14, 2019, both plaintiffs were required to confirm their intention to proceed together as co-plaintiffs in this group action. (Doc. 8). Johnson opted to proceed in a separate action, and Reed chose to pursue his claims herein. (Docs. 12, 17, 18). On May 2, 2019, Reed filed an Amended Complaint. (Doc. 22). The Amended Complaint supersedes and replaces the original Complaint and is subject to review herein under 28 U.S.C. § 1915A. *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004).

1

meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Amended Complaint are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Amended Complaint

Plaintiff makes the following allegations in the Amended Complaint (Doc. 22): On May 9, 2018, Menard officials found 27.2 grams of tobacco in a gutter near Menard's North Lowers Cell House. (Doc. 22, p. 8). The following day, Inmate Christopher Harris admitted that the tobacco belonged to him. *Id*. Harris stated that he was transferring it to Derrondas Reed. *Id*. Although Harris later recanted this statement in an affidavit, Reed and his cellmate, Terrance Johnson, became the target of an investigation into tobacco trafficking at the prison. *Id*. at pp. 4, 8. At the time, both men were widely regarded as model inmates and assigned lucrative jobs as cellhouse porters/janitors. *Id*. Their status changed on May 10, 2018, however, when Reed and Johnson were strip-searched, handcuffed, and placed on investigative status by internal affairs officers. *Id*. at pp. 4-8. Officer Bridges interviewed each about the other's involvement in a tobacco trafficking operation. *Id*. Reed and Johnson denied knowledge of the other's involvement in this activity. *Id*.

Officers Hughey and Dye then interviewed Reed on May 21, 2018. *Id*. When he denied involvement in tobacco trafficking, the officers accused him of lying about his status as the "tobacco guy" at Menard. *Id*. They threatened Reed with criminal charges if he did not disclose the name(s) of the staff member(s) or inmate(s) who supplied him with tobacco. *Id*. at p. 5. Reed was denied a lawyer during this interview and was not read his *Miranda* rights. The officers also interviewed Johnson about Reed's involvement in tobacco trafficking. *Id*. at pp. 5-6.

Officers Hughey and Dye conducted another round of interviews on May 24, 2018 – this time with disciplinary reports in hand. *Id*. at p. 7. They warned Reed and Johnson that this interview was

2

their final opportunity to avoid punishment. *Id*. When both inmates again denied knowledge or involvement in a tobacco trafficking operation, they were issued tickets citing violations of IDOC Rule #103 (bribery and extortion), IDOC Rule #110 (impeding or interfering with an investigation), and IDOC Rule #203 (drugs and drug paraphernalia (tobacco)). *Id*. at pp. 7-8. The tickets were supported by the testimony of confidential informants and false admissions of state and federal law violations by Reed and Johnson. *Id*.

At an Adjustment Committed hearing before Lieutenant Brookman and Jason Hart on June 5, 2018, Reed and Johnson offered exonerating evidence that included the affidavit of Inmate Harris. *Id*. at p. 9. Both inmates were nevertheless found guilty of all three rule violations and punished with four months of segregation, demotion to C-grade status, commissary restriction, and property restriction and six months of contact visit restrictions. *Id*. at pp. 9-10.

Reed filed a grievance challenging the disciplinary investigation, report, and punishment, but Grievance Officer Wandro and Warden Lashbrook denied it. *Id*. He appealed the decision to the Administrative Review Board (ARB), and the ARB dismissed the Rule #110 violation only. *Id*. at p. 11. As a result of the disciplinary action, Reed lost his job and significant personal property. *Id*. at p. 10.

Based on the allegations in the Amended Complaint, the Court finds it convenient to divide the *pro se* action into the following Counts:

> **Count 1:** First Amendment retaliation claim against Dye, Hughey, and Internal Affairs Supervisor John Doe for drafting a false disciplinary report and persuading another inmate to submit a fabricated statement against Plaintiff when he did not provide information in the tobacco trafficking investigation.
>
> **Count 2:** Fifth Amendment claim against Dye, Hughey, and Internal Affairs Supervisor John Doe for drafting a false disciplinary report and persuading another inmate to submit a fabricated statement against Plaintiff in an attempt to compel him to give self-incriminating information during the tobacco trafficking investigation.
>
> **Count 3:** Fourteenth Amendment procedural due process claim against Dye, Hughey, and Internal Affairs Supervisor John Doe for filing a false disciplinary report.

> **Count 4:** Fourteenth Amendment procedural due process claim against Brookman, Hart, and Lashbrook for disregarding constitutionally required procedures while conducting the disciplinary hearing.
>
> **Count 5:** Fourteenth Amendment due process claim against Wandro, Burle, and Baldwin for affirming the unconstitutional process used by the Adjustment Committee during Plaintiff's disciplinary hearing and upholding the retaliatory actions of Dye, Hughey, and Internal Affairs Supervisor John Doe.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by this Court. **Any claim that is mentioned in the Amended Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.**[2]

## Discussion

### Count 1

To state a claim for retaliation under the First Amendment, Plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (citation omitted). As Plaintiff alleges he received a disciplinary ticket in retaliation for truthfully answering questions posed by Officers Hughey and Dye, Count 1 will receive further review against both these defendants. *McKinley v. Schoenbeck*, 731 F. App'x 511, 514 (7th Cir. 2018) (prisoner retains First Amendment right to truthfully answer questions during an investigation, even if those answers are not what the officers want to hear).

However, Count 1 will be dismissed against John Doe. Although Plaintiff is not required to identify each defendant with specificity at this stage, he is required to describe the gist of his claims

---

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This includes Plaintiff's claim that the Adjustment Committee did not have the authority to find him guilty of violating a state or federal law. Plaintiff was found guilty of prison policy violations, not criminal violations. *See* ILL. ADMIN. CODE tit. 20, § 504 Appendix A. The Adjustment Committee has authority to discipline inmates for violations of prison policy. *Thomas v. Ramos,* 130 F.3d 754, 764 (7th Cir. 1997).

against each individual along with supporting facts. Here, Plaintiff relies on conclusory statements of this defendant's involvement in the disciplinary action taken against him, which is not enough to support a plausible claim. *Ashcroft v. Iqbal,* 556 U.S. 661, 678 (2009). Moreover, to the extent Plaintiff claims John Doe is liable because of his leadership role, the claim also fails on that basis. *Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008) (no *respondeat superior* liability in Section 1983 action). Accordingly, Count 1 will receive further review against Officers Dye and Hughey and will be dismissed without prejudice against John Doe.

**Count 2**

Prison officials may not retaliate against someone for giving truthful testimony and they may not attempt to override the Fifth Amendment privilege against self-incrimination and compel testimony, even in a prison disciplinary proceeding. *See, e.g., Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973) (Fifth Amendment protections extend beyond criminal prosecution to include "other proceeding[s], civil or criminal, formal or informal, where the answers might incriminate [person] in future criminal proceedings."); *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976); *Vermillion v. Levenhagen,* 604 F. App'x 508, 512 (7th Cir. 2015). Plaintiff claims he was engaged in Fifth Amendment activity when he "refused to incriminate himself" and "refused to admit to any involvement with trafficking [or] implicate another inmate." (Doc. 22, p. 12). Officer Dye, Officer Hughey, and I.A. Supervisor John Doe issued him a disciplinary ticket because of this decision. *Id.* at pp. 4-7, 12. Based on these allegations, Plaintiff's Fifth Amendment claim against Dye and Hughey survives at this stage. However, Count 2 will be dismissed without prejudice against John Doe for the same reasons Count 1 is being dismissed against this individual.

**Count 3**

In order to state a procedural due process claim under the Fourteenth Amendment, Plaintiff must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The right to due

process is triggered only when a protected interest is at stake. A court analyzing this claim in the context of prison disciplinary hearings must consider (1) whether there was a protected interest at stake that necessitated due process protections and (2) whether the disciplinary hearing was conducted in accordance with procedural due process requirements. *Id*.

Although Plaintiff complains of numerous procedural due process violations in connection with the disciplinary investigation, ticket, and hearing, the allegations do not suggest that a protected interest was at stake. Plaintiff claims he was placed in segregation for four months, demoted to C-grade, subject to commissary restriction, and lost his job. But demotion to C-grade status, loss of commissary privileges, and/or job loss do not give rise to a protected liberty or property interest. *Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997) (collecting cases) (there is no protected liberty interest implicated in demotion to C-grade status or loss of certain privileges); *DeWalt v. Carter,* 224 F.3d 607, 613 (2000) (prisoners do not have a liberty or property interest in their jobs). Moreover, absent any indication that Plaintiff endured an "atypical and significant hardship" in segregation, no liberty interest arises from four months' placement in segregation with limited shower and recreation access. *See Beamon v. Pollard,* 711 F. App'x 794, 795 (7th Cir. 2018) (four months in segregation does not implicate a protected liberty interest); *Vasquez v. Braemer,* 586 F. App'x 224, 228 (7th Cir. 2014) ("Allowing inmates only two showers and four hours of outside recreation each week does not violate the Eighth Amendment.") (citations omitted). Plaintiff has not established that he was deprived of a protected liberty interest while in segregation.

Additionally, the alleged deprivation of access to Plaintiff's personal possessions implicates no protected property interest because the state provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Hudson v. Palmer,* 468 U.S. 517, 530-36 (1984); *Murdock v. Washington,* 193 F.3d 510, 513 (7th Cir. 1999); *Turley v. Rednour,* 729 F.3d 645, 653 (7th Cir. 2013). Accordingly, Plaintiff must pursue any property claims in that forum; Count 3 will be dismissed without prejudice for failure to state a claim.

**Count 4**

Plaintiff claims that Brookman, Hart, and Lashbrook deprived him of a protected liberty and property interest without due process by conducting the disciplinary hearing without satisfying constitutional requirements. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). He points to numerous alleged violations of his procedural due process rights. However, the Court need not consider whether the Adjustment Committee afforded Plaintiff due process because it has concluded that no protected liberty or property interest was at stake. Thus, no process was due. Count 4 will therefore be dismissed without prejudice as well.

**Count 5**

Plaintiff claims that Wandro, Burle, and Baldwin violated his Fourteenth Amendment rights by denying his grievances and appeals regarding the alleged unconstitutional disciplinary proceedings and retaliatory conduct of Hughey, Dye, and John Doe. Because prison grievance procedures are not constitutionally mandated and do not implicate the Due Process Clause per se, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011). In other words, some personal involvement beyond the grievance process is necessary. *Haywood v. Hathaway*, 842 F.3d 1026 (7th Cir. 2016). Plaintiff does not offer sufficient allegations in support of any other claim against these individuals for retaliation or due process violations, and their supervisory positions alone do not subject them to § 1983 liability. *Kinslow,* 538 F.3d at 692. Count 5 will therefore be dismissed without prejudice for failure to state a claim for relief against these defendants.

**Motion for Recruitment of Counsel**

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 4), which is **DENIED** without prejudice.[3] Although Plaintiff has demonstrated reasonable efforts to locate counsel on his own, he has not established that he requires the assistance of counsel at this time. Plaintiff's Amended Complaint survives screening, and he has filed timely, coherent pleadings and motions thus far. He cites "some high school education" and his status as a "layman with a mental disability" as his only impediments to self-representation. Given the straightforward nature of his claims and his demonstrated ability to litigate this matter to date, the Court finds that counsel is not yet necessary to assist Plaintiff. However, the Court remains open to the appointment of counsel in the future. Plaintiff may renew his motion, if he believes it is necessary to do so as the case proceeds.

**Disposition**

**IT IS ORDERED** that the Amended Complaint (Doc. 22) survives screening under 28 U.S.C. § 1915A, as follows: **COUNTS 1** and **2** will proceed against Defendants **HUGHEY** and **DYE**. However, both claims are **DISMISSED** without prejudice against Defendant **JOHN DOE.** In addition, **COUNTS 3, 4,** and **5** are **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants **JOHN DOE, BROOKMAN, LASHBROOK, BURLE, BALDWIN, HART,** and **WANDRO** as parties to this action in the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

With respect to **COUNTS 1** and **2,** the Clerk of Court shall prepare for Defendants **HUGHEY** and **DYE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 22), and this Memorandum and Order to each Defendant's place of

---

[3] In evaluating this motion, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **<u>Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.</u>**

This entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted.  *See* 28 U.S.C. §§ 1915(f)(1), (2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  8/8/2019**

s/ Staci M. Yandle
**STACI M. YANDLE**
**United States District Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**